IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **HUMBERTO TINOCO** on behalf of himself and all other similarly situated employees, known and unknown, <br><br> Plaintiff, <br><br> v. <br><br> **EXHAUST AND BRAKE EXPERTS, INC.**, an Illinois corporation, **JOHN DOE COMPANY d/b/a Interstate Auto**, an Illinois or foreign business organization, and **FARIS HASSAN**, individually, <br><br> Defendants. | Civil Action <br><br><br><br> No. <br><br><br><br><br><br><br><br> JURY DEMAND |

## COMPLAINT

By and through his attorneys of record and on behalf of himself and all other similarly situated employees, known and unknown, the plaintiff, HUMBERTO TINOCO (the "Plaintiff"), hereby complains of the defendants, EXHAUST AND BRAKE EXPERTS, INC. ("EABE"), an Illinois corporation, JOHN DOE COMPANY d/b/a Interstate Auto ("INTERSTATE"), an Illinois or foreign business organization, and FARIS HASSAN ("HASSAN"), individually, (jointly and severally, the "Defendants"). Pleading hypothetically and in the alternative, the Plaintiff alleges as follows:

### I. INTRODUCTION

1. This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as a result of the Defendants' failure to pay overtime compensation to the Plaintiff, and to other similarly situated employees of the Defendants (the "Collective Class"). The Plaintiff routinely worked in excess of 40 hours per week for

the Defendants, but the Defendants failed and refused to pay him time-and-one-half overtime compensation for the hours he worked in excess of 40 as the FLSA requires. Upon information and belief, the Defendants failed and refused to pay the Collective Class time-and-one-half overtime compensation for the hours they worked in excess of 40 as well. In Count I, the Plaintiff brings a claim pursuant to Section 16(b) of the FLSA.

2. In Counts II and III, the Plaintiff brings supplemental claims pursuant to the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq*. The rights and remedies set forth in these statutes are generally similar and analogous to those that Congress set forth in the FLSA.

3. In Count IV the Plaintiff brings a relation claim pursuant to Section 215 of the FLSA.

## The Defendants' Scheme to Avoid Paying Overtime Compensation

4. From about March 1, 2007, to about November 15, 2011, (the "Employment Period") the Plaintiff worked as a mechanic for the Defendants at their auto repair business.

5. During the Employment Period the Plaintiff did not work for any other employers.

6. Specifically, during the Employment Period, the Plaintiff occasionally worked on his friends' and relatives' cars on a casual basis, but supported himself and earned the overwhelming majority (if not all) of his income by working for the Defendants.

7. Until the last several months of the Employment Period, the Plaintiff's check stubs did not record the number of hours he worked each week but, rather, listed the

number of hours as "1," along with a pay rate of, variously, "$625.00," "$500.00," "$400.00," and so on.

8. During the Employment Period, the Defendants paid the Plaintiff an average of $625.00 per week.

9. When, as indicated above, the Plaintiff's checks were for amounts less than $625.00, the Defendants would often supplement the checks with cash payments, so that the Plaintiff would receive about $625.00 per week either by check, in cash or with a combination of cash and check.

10. During the first year of the Employment Period, the Plaintiff typically worked about 50 hours per week for the Defendants; and thereafter, until the last several months of the Employment Period, the Plaintiff typically worked about 59 hours per week for the Defendants.

11. It follows that, during the first year of the Employment Period, the Plaintiff's *de facto* hourly wage was $12.50 ($625.00 / 50 = $12.50); and thereafter, until the last several months of the Employment Period, the Plaintiff's *de facto* hourly wage was $10.59 ($625.00 / 59 = $10.59).

12. Several months before the end of the Employment Period, the Plaintiff complained to HASSAN that he was not receiving overtime compensation, and demanded that the Defendants pay him overtime compensation.

13. In response, rather than paying him overtime compensation, the Defendants retaliated by cutting the Plaintiff's hours and *de facto* rate of pay.

14. In the last several months of the Employment Period, the Defendants began to list the purported number of hours that the Plaintiff worked each week on his check stubs.

15. During the last several months of the Employment Period, the Plaintiff's check stubs would indicate that he was in fact paid overtime compensation (1.5 times the Plaintiff's regular, hourly rate) based on a false rate of $9.13 per hour.

16. During the last several months of the Employment Period, the Defendants supplemented the checks described above with cash as they had always done.

17. During the last several months of the Employment Period, however, the Defendants began to call the cash payments made to the Plaintiff "commission."

18. The cash payments were in fact not commissions but were arbitrary and bore no relationship to any sales made or jobs done by the Plaintiff.

19. Upon information and belief, the Defendants began calling the cash payments "commissions," as a cover story in order to hide their scheme to avoid paying proper overtime compensation.

20. During the last several months of the Employment Period, the cash payments were in various, arbitrary amounts that did not bring the Plaintiff's total compensation up to $675.00 per week as it had previously been.

21. During the last several months of the Employment Period, the Plaintiff's *de facto* hourly wage was therefore something higher than the inaccurate "$9.13" listed on his check stubs during that period and something lower than the $10.59 that he had been paid previously with a combination of cash and check.

22. The Defendants' policy of paying the Plaintiff with a combination of cash and check, of failing to accurately record the number of hours the Plaintiff worked in all or most of the weeks during the Employment Period, and of listing an inaccurate hourly wage rate

on the Plaintiff's check stubs during the last months of his employment violate 29 U.S.C. §§ 211(c) and 215(a)(5), and 29 C.F.R. § 516.2 among other laws and regulations.

## The Collective Class

23. Upon information and belief, the Defendants employed approximately 5 other mechanics and/or technicians at any given time during the Employment Period and continuing through the present day.

24. On many occasions during the Employment Period, the Plaintiff personally observed that the members of the Collective Class worked more than 40 hours per week.

25. On many occasions during the Employment Period, the Plaintiff personally observed that the members of the Collective Class were paid in the same manner as he was – with a combination of cash and check.

26. On many occasions during the Employment Period, the Plaintiff spoke with many members of the Collective Class, who confirmed that they were paid in the same manner as he was – with a combination of cash and check, with no overtime premium.

27. The members of the Collective Class worked schedules that were similar to the Plaintiff's schedule, and would typically work anywhere between 50 and 59 hours per week.

28. Given the amount of hours versus the amount of wages actually paid, the members of the Collective Class worked, and work, at the lowest stratum of the economy and, especially in the current poorer-than-average economy, are subjected to economic duress in that they risk retaliation (up to and including the termination of their employment) if they come forward.

29. The risk of retaliation described above is not illusory. This is exemplified by the fact that, after the Plaintiff complained about the Defendants' payroll practices and demanded payment of proper overtime compensation, his hours and wage rate were cut in retaliation.

30. The Defendants cut the Plaintiff's hours, as described above, as an example to the other members of the Collective Class in order to intimidate them and persuade them not to join this action.

31. On many occasions during the Employment Period, the Plaintiff spoke with the members of the Collective Class, who told the Plaintiff that they were afraid to speak out about the Defendants' FLSA violations for fear that they would lose their jobs.

32. The scheme to avoid paying overtime compensation described above is elaborate and complex and the therefore Defendants' failure to pay proper overtime compensation could not have been inadvertent.

## II. THE PARTIES

33. The Plaintiff is an individual domiciled within Illinois and resides within the Northern District of Illinois.

34. HASSAN is an individual who, upon information and belief, is domiciled in Illinois and resides within the Northern District of Illinois.

35. EABE is an Illinois corporation that maintains a registered office in Illinois at 2158 S. Pulaski Road, Chicago, IL 60623, which address is within the Northern District of Illinois.

36. INTERSTATE is an Illinois or foreign business organization that maintains a principal place of business within the Northern District of Illinois.

37. At all times relevant to this action, HASSAN is/was a corporate officer of EABE.

38. At all times relevant to this action, relative to INTERSTATE, HASSAN is/was: a) a corporate officer; b) a member; c) a manager; d) a director; and/or e) a general partner.

39. Upon information and belief, at all times relevant to this action, HASSAN holds/held an ownership interest in EABE.

40. Upon information and belief, at all times relevant to this action, HASSAN holds/held an ownership interest in INTERSTATE.

41. Upon information and belief, at all times relevant to this action, HASSAN exercises/exercised significant control over EABE's day-to-day operations.

42. Upon information and belief, at all times relevant to this action, HASSAN exercises/exercised significant control over INTERSTATE's day-to-day operations.

43. Upon information and belief, at all times relevant to this action, HASSAN exercises/exercised significant control over EABE's human resources and payroll practices.

44. Upon information and belief, at all times relevant to this action, HASSAN exercises/exercised significant control over INTERSTATE's human resources and payroll practices.

45. At all times relevant to this action, during the Employment Period, HASSAN was the Plaintiff's supervisor and/or manager.

46. At all times relevant to this action, HASSAN was/is a supervisor and/or manager of the members of the Collective Class.

### III. JURISDICTION AND VENUE

47. Federal question jurisdiction is conferred on this Court by Section 16(b) of the FLSA and 28 U.S.C. §1331.

48. Supplemental jurisdiction over the Illinois statutory claims alleged herein is conferred on this Court by 28 U.S.C. § 1367(a).

49. Venue is proper as the acts or omissions that gave rise to the claims alleged herein occurred within the Northern District of Illinois.

50. Further, venue is proper because the Defendants maintain their principal place of business within the Northern District of Illinois.

### IV. STATUTORY CONSENT

51. The Plaintiff brings FLSA claims as a collective action under Section 16(b) of the FLSA on behalf of himself and the Collective Class and in accord with Section 16(b) of the FLSA, the Plaintiff has given written consent to bring such an action (attached as **Exhibit A**).

### V. GENERAL ALLEGATIONS

52. At all times relevant to this action, the Defendants, and each of them, were the Plaintiff's "employer", within the meaning of Section 3(a) and (d) of the FLSA in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

53. At all times relevant to this action, the Defendants are/were the Collective Class's "employer", within the meaning of Section 3(a) and (d) of the FLSA in that the Defendants act/acted directly or indirectly in the interest of the "employer" in relation to

the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

54. At all times relevant to this action, the Defendants were the Plaintiff's "employer" within the meaning of Section 3(c) of the IMWL in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the Plaintiff, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

55. At all times relevant to this action, the Defendants operated, controlled and/or constituted an "enterprise" within the meaning of Section 3(r) of the FLSA (the "Enterprise").

56. At all times relevant to this action, the Enterprise ran an automotive repair shop within the Northern District of Illinois.

57. Upon information and belief, the Enterprise may operate, and may have operated, additional establishments in Illinois.

58. At all times relevant to this action, the Plaintiff was an "employee" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

59. At all times relevant to this action, the members of the Collective Class are/were "employees" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

60. At all times relevant to this action, the Plaintiff was an "employee" of the Defendants within the meaning of Section 3(d) of the IMWL.

61. During the course of his employment by the Defendants, the Plaintiff handled goods that moved in interstate commerce including but not limited to petroleum products, cleaning solvents and auto parts.

62. During the course of their employment by the Defendants, the Collective Class handles/handled goods that moved in interstate commerce including but not limited to petroleum products, cleaning solvents and auto parts.

63. During the course of their employment by the Defendants, the Plaintiff and the Collective Class are/were not exempt from the overtime wage and minimum wage provisions of the FLSA.

64. During the course of their employment by the Defendants, the Plaintiff and the Collective Class are/were not exempt from the overtime wage and minimum wage provisions of the IMWL.

65. The Defendants routinely and as a matter of practice and policy required the Plaintiff to work more than 40 hours per week, but then failed and refused to pay him overtime compensation at the requisite statutory rates.

66. Upon information and belief, the Defendants routinely and as a matter of practice and policy required/require the Collective Class to work more than 40 hours per week, but then failed/fail and refused/refuse to pay them overtime compensation at the requisite statutory rates.

## COUNT I
### (Violation of the FLSA)

67. The Plaintiff hereby re-alleges the foregoing allegations.

68. Among other ways, the Defendants violated the FLSA by:

   a. failing to pay the Plaintiff for certain overtime (in excess of 40 in a given workweek) hours at a rate equal to or greater than one and one-half times the regular rate at which he was employed;

   b. failing to accurately record the number of hours the Plaintiff worked each week; and

      c. failing to provide the Plaintiff with pay stubs that accurately listed the number of hours he worked each week.

69. Upon information and belief, the Defendants also violated the FLSA by:

      a. failing to pay the Collective Class for certain overtime (in excess of 40 in a given workweek) hours at a rate equal to or greater than one and one-half times the regular rate at which they are/were employed;

      b. failing to accurately record the number of hours the Collective Class worked/works each week; and

      c. failing to provide the Collective Class with pay stubs that accurately listed/list the number of hours they worked/work each week.

70. The Defendants' violation of the FLSA was willful in that the Defendants were aware or should have been aware of their obligations under the FLSA, but nevertheless attempted to circumvent its provisions.

71. The Defendants failed to take affirmative steps to ascertain their obligations under the FLSA.

WHEREFORE, on behalf of himself and the Collective Class, the Plaintiff prays for judgment in his favor and against the Defendants, and for the following relief:

      A. damages in an amount equal to the unpaid overtime compensation due and owing to the plaintiffs for each hour the plaintiffs worked in excess of 40 in any given week, but for which the Defendants failed to pay the plaintiffs at a rate equal to or greater than one and one-half times the regular rate at which the plaintiffs were employed (in no case less than one and one-half times the IMWL's mandatory minimum rate);

      B. statutory liquidated damages as allowed by the FLSA;

      C. interest on all amounts awarded;

      D. attorneys' fees, together with costs of suit and collection; and

      E. such further relief as may be fair and just in the premises.

## COUNT II
### (Violation of the IMWL)

72. The Plaintiff hereby re-alleges the foregoing allegations.

73. Among other ways, the Defendants violated the IMWL by;

    a. failing to pay the Plaintiff for certain overtime (in excess of 40 in a given workweek) hours at a rate equal to or greater than one and one-half times the regular rate at which he was employed;

    b. failing to accurately record the number of hours the Plaintiff worked each week; and

    c. failing to provide the Plaintiff with pay stubs that accurately listed the number of hours he worked each week.

74. The Defendants were aware or should have been aware of its obligations under the IMWL, but nevertheless attempted to circumvent its provisions.

75. The Defendants failed to take affirmative steps to ascertain their obligations under the IMWL.

WHEREFORE, the Plaintiff prays for judgment in his favor and against the Defendants, and for the following relief:

A. damages in an amount equal to the unpaid overtime compensation due and owing to the Plaintiff for each hour the Plaintiff worked in excess of 40 in any given week, but for which the Defendants failed to pay the Plaintiff at a rate equal to or greater than one and one-half times the regular rate at which the Plaintiff was employed (in no case less than one and one-half times the IMWL's mandatory minimum rate);

B. statutory punitive damages as allowed by the IMWL;

C. interest on all amounts awarded;

D. attorneys' fees, together with costs of suit and collection; and

E. such further relief as may be fair and just in the premises.

## COUNT III
### (Violation of the IWPCA)

76. The Plaintiff hereby re-alleges the foregoing allegations.

77. The Plaintiff brings his IWPCA claim as a representative action under the Section 11 of the IWPCA on behalf of himself and the Collective Class.

78. Among other ways, the Defendants violated the IWPCA by:

   a. failing to pay the Plaintiff certain overtime (in excess of 40 in a given workweek) wages either weekly or bimonthly;

   b. failing to pay the Plaintiff certain overtime wages within either 7 days of the close of each relevant workweek, or within 13 days of the close of each relevant bimonthly pay-period;

   c. failing to pay the Plaintiff the difference between the applicable minimum wage and the applicable overtime premium ("gap pay"); and

   d. failing to pay the Plaintiff certain wages altogether

79. Upon information and belief, among other ways, the Defendants violated the IWPCA by:

   a. failing to pay the Collective Class certain overtime (in excess of 40 in a given workweek) wages either weekly or bimonthly;

   b. failing to pay the Collective Class certain overtime wages within either 7 days of the close of each relevant workweek, or within 13 days of the close of each relevant bimonthly pay-period;

   c. failing to pay the Collective Class the difference between the applicable minimum wage and their respective, overtime premiums ("gap pay"); and

   d. failing to pay the Collective Class certain wages altogether.

WHEREFORE, on behalf of himself and the Collective Class, the Plaintiff prays for judgment in his favor and against the Defendants, and for the following relief:

A. damages in an amount equal to the unpaid wages (including but not limited to overtime compensation) due and owing to the plaintiffs for each hour the plaintiffs worked but for which the Defendants failed to pay the plaintiffs at a rate equal to the regular rate at which the plaintiffs were employed (and as applicable, one-and-one-half times the regular rate at which the plaintiffs were employed – for those hours over 40 in any given workweek);

B. an order commanding the Defendants to pay the plaintiffs any all unpaid wages (including but not limited to overtime compensation) due and owing to the plaintiffs for each hour the plaintiffs worked, but for which the Defendants failed to pay the plaintiffs at a rate equal to the regular hourly rate at which the plaintiffs were employed (and as applicable, one-and-one-half times the regular rate at which the plaintiffs were employed – for those hours over 40 in any given workweek);

C. interest on all amounts awarded;

D. attorneys' fees, together with costs of suit and collection; and

E. such further relief as may be fair and just in the premises.

## COUNT IV
### (Retaliation in Violation of the FLSA – Adverse Employment Action)

78. The Plaintiff hereby re-alleges the foregoing paragraphs.

79. In about May, 2011, the Plaintiff complained to HASSAN about the Defendants' payroll practices and demanded that the Defendants begin paying him proper overtime compensation.

80. Shortly after the Plaintiff demanded that the Defendants begin paying him proper overtime compensation, the Defendants cut the Plaintiff's hours.

81. The Plaintiff's demand for the payment of proper overtime compensation, constituted protected activity under Section 15(a)(3) of the FLSA.

82. Cutting the Plaintiff's hours constituted an adverse employment action.

83. The Defendants had no legitimate or lawful reason to cut the Plaintiff's hours.

84. The Defendants violated the FLSA by cutting the Plaintiff's hours in retaliation for his having made the complaint and demand described above.

85. The Plaintiff was damaged as a direct and proximate result of the Defendants' retaliatory actions in that the Plaintiff suffered and continues to suffer pecuniary loss, and suffered severe emotional trauma and humiliation.

WHEREFORE the Plaintiff prays for judgment in his favor and against the Defendants, and for the following relief:

A. such injunctive and equitable relief as will make the Plaintiff whole, including but not limited to reinstatement, backpay, frontpay in lieu of reinstatement, and compensation for future lost earnings capacity;

B. such further injunctive and equitable relief as may be necessary to prevent future violations of the FLSA;

C. compensatory and punitive damages;

D. interest on all amounts awarded;

E. attorneys' fees, together with costs of suit and collection; and

F. such further relief as may be fair and just in the premises

## **JURY DEMAND**

The Plaintiff demands trial by jury of all issues set forth herein that are capable of being tried by a jury.

                                      Respectfully submitted,

                                      /s/Paul Luka
                                      One of the Plaintiff's Attorneys

Roy P. Amatore, Esq.
Paul Luka, Esq.
AMATORE & ASSOCIATES, P.C.
120 S. State Street · Suite 400
Chicago, IL 60603
312.236.9825

Eric C. Brunick, Esq.
Brunick LLC
22 W. Washington Street
Suite 1500
Chicago, IL 60602
312-854-8000

# EXHIBIT A

## CONSENT TO BE A PARTY PLAINTIFF

The undersigned hereby authorizes and engages Amatore & Associates, P.C., to pursue his/her claims for unpaid wages, and other relief, against Interstate Auto Repair, Exhaust and Brake Experts, and any other person who may have employed him/her in conjunction with said person/s (collectively the "Employers"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employers on behalf of him/herself and all other similarly situated employees, pursuant to 29 U.S. C. § 216(b).

_____
Humberto Tinoco